UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>YVES MONTIMA,<br><br>Defendant | Criminal No. 21cr10329<br><br>Violation:<br><br>Count One: Bank Fraud Conspiracy<br>(18 U.S.C. § 1349)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(2)) |

INFORMATION

At all times relevant to this Information:

General Allegations

1. Defendant YVES MONTIMA ("MONTIMA") resided in Stoughton, Massachusetts.

2. CC-1, MONTIMA's godson, resided in Stoughton, Massachusetts.

3. Individual 1, CC-1's girlfriend, resided in Massachusetts.

4. Individual 2, an acquaintance of CC-1, resided in Massachusetts.

5. Cross River Bank was a financial institution within the meaning of Title 18, United States Code, Section 20.

6. The Paycheck Protection Program ("PPP") offered two forgivable loans of up to $20,833 each to small businesses and independent contractors affected by the COVID-19 pandemic. The loan proceeds could be used for payroll and certain other business expenses.

1

7. To obtain a PPP loan, a qualifying business or independent contractor applied to a participating financial institution, providing details about the business and documents to verify its income.

8. The Small Business Administration ("SBA") guaranteed any loans that financial institutions approved and funded.

## Overview of the Conspiracy and the Scheme to Defraud

9. From in or about April 2020 to in or about April 2021, MONTIMA, CC-1, and others known and unknown to the U.S. Attorney engaged in a scheme and artifice to defraud and to obtain money and property from financial institutions and the SBA by means of false and fraudulent pretenses, representations, and promises, by submitting fraudulent PPP loan applications.

## Object and Purpose of the Conspiracy and the Scheme to Defraud

10. The object of the conspiracy and the scheme to defraud was to profit by submitting fraudulent PPP loan applications to financial institutions. The principal purpose of the conspiracy and the scheme to defraud was to make money.

## Manner and Means of the Conspiracy and the Scheme to Defraud

11. Among the manner and means by which MONTIMA, CC-1, and others known and unknown to the U.S. Attorney carried out the conspiracy and the scheme to defraud were the following:

   a. CC-1 recruited individuals, including Individuals 1 and 2, willing to provide their personally identifiable information for use in a PPP loan application.

  b. CC-1 charged these individuals $5,000 in cash up front in order to have CC-1 and MONTIMA obtain an approximately $20,000 PPP loan in their names.

  c. CC-1 and MONTIMA shared the $5,000 fee.

  d. CC-1 and MONTIMA submitted fraudulent PPP loan applications to financial institutions in the names of CC-1, Individuals 1 and 2, and other individuals CC-1 recruited.

  e. CC-1 and MONTIMA falsified information in the loan applications to ensure that the financial institutions would approve them, including by listing professions for the applicants that were associated with contract work, such as a certified nursing assistant.

  f. CC-1 and MONTIMA submitted PPP loan applications that falsely claimed hundreds of thousands of dollars in business and independent contractor income—amounts sufficient to support claims at or near the maximum allowable loan amount.

  g. MONTIMA supported the applicants' claimed incomes by forging IRS Forms Schedule C.

  h. Once the loans were processed and approved, CC-1, Individuals 1 and 2, and others CC-1 recruited received approximately $20,000 in forgivable PPP loans.

  i. For some of the loans, CC-1 and MONTIMA renewed the fraudulent loan applications to obtain a second $20,000 forgivable loan.

  j. In this fashion, MONTIMA, CC-1, and others known and unknown to the U.S. Attorney submitted approximately twelve fraudulent PPP loan applications and obtained approximately $220,000 for CC-1, Individuals 1 and 2, and others.

3

## Acts in Furtherance of the Conspiracy and the Scheme to Defraud

12. From in or about April 2020 to in or about April 2021, MONTIMA, CC-1, and others known and unknown to the U.S. Attorney committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

*Loan 1 (for CC-1)*

    a. On or about June 9, 2020, MONTIMA sent CC-1 a text message requesting a blank check bearing CC-1's name to be used in a fraudulent PPP loan application.

    b. On or about June 10, 2020, MONTIMA created a fraudulent Schedule C that identified CC-1's business as "Graphic Design", listed the address of a printing business where CC-1 did not work, and claimed $116,500 in gross receipts for the tax year 2019.

    c. On or about June 15, 2020, MONTIMA applied for a PPP loan at Fundbox, Inc. ("Fundbox") in the name of CC-1 ("Loan 1"). The loan application falsely claimed that CC-1 worked in graphic design, contained the falsified Schedule C tax form that MONTIMA created, and requested that $20,493 in PPP funds for "payroll" be transferred to a bank account that CC-1 controlled.

    d. On or about June 17, 2020, MONTIMA sent a text message to CC-1 stating, "Approved for $20,492, but they can only hold it until COB tomorrow."

*Loan 2 (for Individual 1)*

    e. On or about June 17, 2020, CC-1 sent a text message to MONTIMA asking, "Would we be able to do one for [Individual 1]."

      f.     On or about June 18, 2020, MONTIMA created a fraudulent Schedule C in the name of Individual 1 that falsely identified her business as "Health Services" and claimed receipts of $108,910 for the tax year 2019.

      g.     On or about June 19, 2020, MONTIMA sent a text message to CC-1 stating, "I called [Individual 1] but she wasn't available. She is all set. The next step is the same as yours."

      h.     That same day, MONTIMA applied for a PPP loan at Fundbox in the name of Individual 1 ("Loan 2"). The loan application falsely claimed that CC-1 worked in healthcare, contained the falsified Schedule C for Individual 1, and requested $20,580 in PPP funds for "payroll".

*Loan Renewals*

      i.     On or about January 20, 2021, MONTIMA sent a text message to CC-1 stating, "You and [Individual 1] are eligible to apply for a second PPP loan. If you want proceed, I will need a bank statement for the month of February 2020 for each of you."

      j.     On or about January 20, 2021, CC-1 replied, "Ok thanks I was just about to call you lol I'll have both our statements ready for u next month."

      k.     On or about February 12, 2021, CC-1 sent a text message to MONTIMA asking, "How me and [Individual 1] looking[?]"

      l.     On or about February 12, 2021, MONTIMA replied by text message, "Still waiting for the 2nd approval."

      m.     On or about February 14, 2021, MONTIMA applied to Cross River Bank for a second-round PPP loan in the name of Individual 1. The loan application requested an

additional $20,580 based on the same fraudulent representations MONTIMA made to obtain Loan 2.

  n. On or about March 31, 2021, MONTIMA applied to Cross River Bank for a second-round PPP loan in the name of CC-1. The loan application requested an additional $20,491 based on the same fraudulent representations MONTIMA made to obtain Loan 1.

*Loans for Others*

  o. On or about June 23, 2020, CC-1 sent a text message to MONTIMA stating, "What's up would we be able to do a few more people[?]"

  p. MONTIMA replied, "They are going to open up the PPP program again until Aug 8."

  q. On or about March 16, 2021, MONTIMA and CC-1 exchanged text messages discussing how other individuals would pay MONTIMA and CC-1 for preparing and submitting PPP loan applications. CC-1 stated, "No that's not how it works no paper trail. Don't do it for her till she pays 4K. Plus my 1K... Ur only accepting payments through me. I don't think I'm being unreasonable."

*Loan 3 (for Individual 2)*

  r. On or about April 7, 2021, CC-1 provided MONTIMA with a copy of Individual 2's driver's license, bank statements, 2019 tax returns, and a voided check. Individual 2's tax return indicated that she was not self-employed and did not contain a Schedule C.

  s. On or about April 7, 2021, MONTIMA spoke by phone with CC-1 regarding Individual 2, and engaged in the following exchanges:

  MONTIMA: "What does [Individual 2] do?"

CC-1: "She does day care or whatever she needs it through."

\*\*\*

MONTIMA: "I just want to make sure these people are aware of"—

CC-1: "Yes, they are on board."

MONTIMA: "Okay, okay. Now . . . the question is like, why does she want, why they want to say, does she do anything like hair or whatever? Cause you need to do something like that. Then I could know how to proceed and at least they know what it is.

CC-1: "She's a hair-dresser"

MONTIMA: [Laughs] "You telling me with a straight face. She's a hairdresser okay. Talk to [Individual 1] and if she does daycare or something like that, that will work better. . . ."

    t.    On or about April 13, 2021, MONTIMA discussed Individual 2's PPP loan application with CC-1, including the following exchange:

MONTIMA: "It wouldn't make sense to do . . . daycare services for her, cause it would raise a lot of, a lot of questions. . . . So, maybe like a CNA [Certified Nursing Assistant] or makeup artist might be the better route to go."

CC-1: "Yeah"

    u.    On or about April 16, 2021, MONTIMA applied to Cross River Bank for a PPP loan in Individual 2's name. The loan application falsely claimed that Individual 2 worked in health services, contained a falsified Schedule C tax form claiming gross receipts of $107,315 for the tax year 2019, and requested $20.832 in PPP funds for "payroll".

7

## COUNT ONE
## Bank Fraud Conspiracy
## (18 U.S.C. § 1349)

The United States Attorney alleges:

13. The United States re-alleges and incorporates by reference paragraphs 1 to 12(u) of this Information.

14. Between in or about April 2020 and in or about April 2021, in the District of Massachusetts and elsewhere, the defendant,

## YVES MONTIMA,

conspired with CC-1 and others known and unknown to the U.S. Attorney to commit bank fraud, that is, to knowingly execute, and attempt to execute, a scheme and artifice to defraud financial institutions, including Cross River Bank, and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of financial institutions, including Cross River Bank, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Section 1349.

FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(2)(A))

The United States Attorney further alleges:

15. Upon conviction of the offense in violation of Title 18, United States Code, Section 1349, set forth in Count One, the defendant,

YVES MONTIMA,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offense. The property to be forfeited includes, but is not limited to, the following assets:

    a. a forfeiture money judgment, in an amount to be determined at sentencing;

    b. $1,173 in United States currency seized from the defendant on May 27, 2021; and

    c. $32,300 in United States currency seized from the defendant on May 27, 2021.

16. If any of the property described in Paragraph 15, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(2), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 15, above.

All pursuant to Title 18, United States Code, Section 982(a)(2).

NATHANIEL R. MENDELL
ACTING UNITED STATES ATTORNEY

By: _____
CHRISTOPHER J. MARKHAM
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

DATE: November 4, 2021